[Civ. No. 3571. Second Appellate District, Division Two.—July 21, 1921.]

J. EDGAR ROSS, Appellant, v. A. J. KALIN et al., Respondents.

[1] PLACE OF TRIAL—APPLICATION FOR CHANGE—PREJUDICE OF RESIDENTS—DISCRETION—APPEAL.—Applications for a change of place of trial on the ground that an impartial trial cannot be had in the county are addressed to the sound legal discretion of the trial court, and its action cannot be disturbed on appeal unless it clearly appears that there had been an abuse of discretion.

[2] ID.—RIGHT OF DEFENDANT.—The right of a defendant to have his case tried in the county wherein he and his witnesses reside is a substantial one and is not to be set aside unless it actually conflicts with the higher right of a plaintiff to have an impartial trial.

[3] ID.—ORDER DENYING MOTION—DISCRETION NOT ABUSED.—On this appeal by the plaintiff from an order denying his motion for a change of place of trial on the ground that he could not have an impartial trial in the county, the trial judge did not exceed or abuse the legal discretion vested in him.

APPEAL from an order of the Superior Court of Imperial County denying a motion for change of place of trial. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

Emmet H. Wilson for Appellant.

C. L. Brown for Respondents.

MYERS, J., *pro tem.*—This is an appeal by plaintiff from an order denying his motion for a change of place of trial on the ground that he could not have an impartial trial in Imperial County. The motion was made after answer filed, and submitted upon the pleadings and upon affidavits in behalf of both parties.

Appellant's contention is that the order should be reversed because the allegations of specific facts in the affidavits submitted in support of the motion, upon which the ultimate conclusion of the impossibility of securing an impartial trial is predicated, are not controverted, and therefore the trial court should have given no weight to the counter-affidavits which, in the main, stated merely the conclusion of the affiant that no prejudice existed which would interfere with an impartial trial.

From the voluminous affidavits in the record we cull the following allegations of fact which are substantially uncontroverted: Prior to the assault hereinafter referred to, plaintiff, by his exceptional activity in a crusade against vice conditions in the city of Brawley and other portions of the county, had incurred the enmity and hatred of "a large number of people," some of whom were socially and politically prominent and influential throughout the county. On October 3, 1918, plaintiff was assaulted by a mob, "consisting of a large number of persons," beaten, tarred and feathered, and chained to a tree in a public place in Brawley. There was a Liberty Loan drive in progress at this time, and plaintiff was charged with being disloyal and pro-German. He was then arrested and tried on a criminal charge of uttering threats to do great bodily injury, and fined and imprisoned. On October 3d, and again on October 18th, the "Brawley News" published editorials approving the mob action. One of the sureties on plaintiff's appeal bond was assaulted, beaten, and threatened with further injury if he would not withdraw therefrom. The other surety received similar threats,

and both were threatened with a boycott. One of the sureties on a bond given by plaintiff in a civil action was threatened, and several persons refused to do business with him because of his connection with plaintiff. The attorney who acted for plaintiff was, because thereof, assaulted, beaten, boycotted, and expelled from two fraternal organizations. The plaintiff now has pending three actions for damages, because of the assault, the imprisonment, and the newspaper publications. The defendants in these actions aggregate about thirty in number, many of them men of large wealth, and all of them men of prominence and influence in the community. Said defendants, their friends and associates, have constantly, since the date of the assault, circulated false and scandalous statements concerning the plaintiff for the purpose of prejudicing the minds of the people against him so that he could not obtain a fair trial.

Numerous other allegations of specific facts, presented in support of the motion, may be classified in one of two groups —either they are denied in affidavits submitted by the defendants, thus presenting a conflict of evidence, or they are obviously pure hearsay, and therefore of no evidentiary value.

Defendants' affidavits admit that prejudice against the plaintiff obtains in the city of Brawley, where he resides, but deny that it exists elsewhere in the county.

There remains to be considered numerous conflicting averments of the ultimate conclusion. Some of the affiants, basing their conclusion upon their observations, acquaintance, and conversations with many residents of the county, state their belief that an impartial trial of plaintiff's cases can be had there without doubt or difficulty. Others, upon a similar basis, state an equally positive belief that such a result will be impossible. The defendants submitted affidavits of twenty-four men, most of whom appear to be men of large affairs and of long residence and wide acquaintance in the county, who aver that there is no prejudice against the plaintiff in any portion of the county outside of the city of Brawley, and that there is no reason why he cannot have an impartial trial in the county.

[1] The rule of law is established by an unbroken line of decisions in this state that ''applications like this are ad-

dressed to the sound legal discretion of the trial court, and
its action cannot be disturbed on appeal unless it clearly
appears that there was an abuse of that discretion." (*J. I.
Case T. Co.* v. *Copren Bros.*, 35 Cal. App. 70, 76, [169 Pac.
443, 445].) Applying this rule to the case at bar, it cannot.
be said to clearly appear that the trial court has abused the
discretion committed to it, unless the uncontroverted facts
above outlined necessarily afford "reason to believe that
an impartial trial cannot be had" in that county. We do
not think this can be said to appear.

The most that can be said with confidence is that at a
time some twenty months prior to this hearing there had
been a strong and bitter feeling of prejudice against the
plaintiff in the minds of "a large number" of residents of
the county (how large a number we are left to conjecture,
except that it was probably in excess of thirty and possibly
as many as three hundred), and that since said time the
thirty defendants in appellant's several damage suits, and
their friends, have been endeavoring to prejudice the minds
of the people against him to prevent his having an impar-
tial trial (with what success we are again left to conjecture).

From the figures submitted as to registered voters, it ap-
pears that there were probably more than eight thousand,
and possibly as many as twelve thousand, qualified jurors
in Imperial County at the time of this hearing. From the
affidavits submitted it could not be said with any confidence
that more than three hundred of those persons bore any
prejudice against the plaintiff at any time, and the num-
ber may well have been very much less.

We are not unmindful of the circumstance that the very
existence of such a widespread prejudice as the appellant
claims would tend to make it difficult, if not impossible, to
procure proof thereof. But this circumstance would not
justify the court in ignoring the rules of evidence to base
its order on suspicion, or conjecture, or hearsay.

[2] The right of defendants to have their case tried in
the county wherein they and their witnesses reside is a sub-
stantial one and is not to be set aside unless it actually con-
flicts with the higher right of a plaintiff to have an impar-
tial trial. [3] The trial judge, in deciding that there was

no such conflict in the instant case, did not exceed or abuse the legal discretion vested in him.

The order appealed from is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 19, 1921.

All the Justices concurred, except Shaw, J., who was absent.