[Civ. No. 7712.  First Appellate District, Division Two.—January 13, 1931.]

J. M. SHARP, Appellant, v. JOINT HIGHWAY DISTRICT No. 6, etc., et al., Respondents.

Edson Abel for Appellant.

Sheridan, Orr, Drapeau & Gardner and Arthur M. Ellis for Respondents.

STURTEVANT, J.—Claiming that the defendants were about to issue a series of illegal "revenue bonds", the plaintiff commenced this action to obtain an injunction against the defendants restraining them from further proceeding with the issue. The defendants answered and a trial was had before the trial court sitting without a jury. The trial court made findings in favor of the defendants and from a judgment entered thereon the plaintiff has appealed and has brought up typewritten transcripts. The case arises under an act of the legislature known as "Joint Highway District Act", chapter 52, Statutes of 1917 (page 46) as amended in 1921 (page 1111), 1925 (page 433) and 1927 (page 249). Under the statute two or more counties may create a joint highway district. The board of supervisors of one county can initiate the proceedings by adopting a resolution. That resolution can be certified to the board of supervisors therein named. The other boards may give a tentative approval and notify the board initiating the proceedings. When notices have been received from those several boards the board initiating the proceedings shall notify the clerk of each board. Upon receipt of that notice each board shall appoint one of its members as a director of the joint highway district. Within thirty days those directors shall meet and organize and employ individuals to make preliminary surveys. The board shall tentatively fix the route of the proposed highway and determine the approximate cost and proportion to be borne by each county. A copy of the report shall be filed with the clerk of the board of supervisors of each county and within thirty days thereafter each board shall by ordinance accept or reject the proposal. A certified copy of the ordinance shall forthwith be transmitted to the board initiating the proceedings, and when each board has acted the one initiating the proceedings shall make a finding of the approval and notify the clerk of each of the other boards of supervisors. If the vote is in favor of the creation of the district a certified copy of the finding shall be filed with the Secretary of State and thereupon the district shall be deemed created and shall be "a public corporation under the designation of Joint Highway District No. —— of the State of California". The purpose for which a district may be created is to provide the necessary authority and means to construct and main-

tain the highway described in the initiatory resolution. The district shall be managed by a board of directors. Each board of supervisors shall select one of its members and those members shall constitute the district board. The board shall fix a place within the district for holding meetings, a majority shall constitute a quorum, and it shall have power to appoint a secretary and employ additional help. The district so formed shall have power to construct a highway, obtain property therefor, to adopt a seal, and to sue and be sued. The boards of supervisors are authorized to appropriate moneys out of funds received from the state of California as for a contingent fund for the district board. As soon as practicable after its organization the district board shall cause a survey to be made and the engineer shall file his report thereof. When that report is received the board shall fix a time and place for considering it, and for the purpose of making an assessment of the estimated cost "upon the State of California, the several counties composing the' district, and upon lands in private ownership as may be benefited by said highway". The notice of said hearing shall be by publication in a newspaper at least two successive weeks before the hearing. The statute contains many provisions relative to assessments on private property that may be benefited. As the defendant board of directors declined to make any such assessment that feature is not involved and those provisions need not be further mentioned. When no assessment is made on private property the board shall make an assessment upon the several counties and upon the state of California. "Upon the conclusion of such hearing such board of directors shall make an order determining the amount of the benefits, if any, to accrue to each county comprising the district, and to the people residing therein, and to the State of California, and shall make an assessment against said counties and state in proportion to the benefits so to accrue. . . . " (Stats. 1925, p. 438, sec. 9.) Ordinarily, the assessments so made shall be charges on the respective entities so assessed and payable in five annual installments, but, under certain facts, the payments may be given a longer spread. The annual installments are payable on the first of July of each calendar year. The statute contains provisions for the collection of the taxes at the same time and place and by the same officers as the col-

lection of county taxes in general. It is further provided "At any time after the assessment, either against the state, the several counties or the land within an assessment district, has been made, the board of directors of the district may anticipate the payment thereof and may issue 'revenue bonds' against the fund into which shall be paid all sums paid on account of the assessments imposed. . . . " "The intent of the foregoing provisions is that there shall be available for the payment of the principal and interest of all bonds issued a sum sufficient to pay the same at the time such interest and principal become due, and it shall be the duty of the board of directors to make provision for the payment of all bonds issued and interest thereon prior to their sale and delivery." (Stats. 1925, p. 441, sec. 21.) The statute prescribes the form, denomination, etc., of the bonds. Continuing the statute provides that when the last bond has been paid the district shall be dissolved and the manner of the dissolution.

The first point which the plaintiff makes is that he adopted the proper remedy. The defendants do not dispute the claim except to assert that the plaintiff has no cause of action.

■ In his second point the plaintiff claims that the bond issue is void because it is prohibited by the provisions of section 18, article XI, of the state Constitution. A state legislature has such powers, in these matters, as are not prohibited by the Constitution. A bare reading of the section cited shows that it does not contain any prohibitions directed to such an entity as the defendant district. (See, also, *In re Madera Irr. Dist.*, 92 Cal. 296, 342, 343 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675].)

■ In his third point the plaintiff claims that the issuance of bonds cannot be justified under the authority of a special assessment district because the proceedings would deprive the plaintiff of his property without due process of law. He quotes many of the provisions of the statute which we have epitomized and then he cites *Gadd* v. *McGuire,* 69 Cal. App. 347 [231 Pac. 754], and contends that the statute gives him no opportunity to state his objections, gives him no hearing, and operates to deprive him of his property without due process of law. The defendants reply that if the statute provides for due notice and a hearing at some

time in the proceedings the parties interested may not complain (*Henshaw* v. *Foster*, 176 Cal. 507, 514, 515 [169 Pac. 82]). They also assert that the plaintiff was represented in the legislature that enacted the enabling act and he was represented by his supervisors, one of whom acted as a member of the local board which initiated the proceeding and that he has had all of the notice that the law requires (*Gadd* v. *McGuire*, 69 Cal. App. 347, 363 [231 Pac. 754]; *Allied Amusement Co.* v. *Bryan*, 201 Cal. 316 [256 Pac. 1097]). Furthermore, the power to build and pay for·roads is one of the powers which is vested in the local board of supervisors. Many county roads are built to the county line, there to be met by a road to be built by the adjoining county; however, no taxpayer would claim the right to be given any notice, regarding such construction, different than the notice regarding other road expenditures. Continuing, the defendants claim that Joint Highway District No. 6 is a *quasi*-municipal corporation and not an assessment district and therefore, no additional notice was necessary. (*In re Orosi Public Utility Dist.*, 196 Cal. 43, 50 [235 Pac. 1004].) With this claim we understand the plaintiff disagrees. ■ He claims the statute is but a subterfuge, that the powers to be exercised are merely those powers which, under general statutes, now rest with the several boards of supervisors, and that the entire statute is but a sham for giving some support to the issuance of the bonds. But we cannot so hold. Let us consider a supposititious set of facts. Let us assume that the total mileage is twenty-five miles; that ten miles lie in the county of A and that the cost of construction is $5,000 per mile; that ten miles lie in the county of B and that the cost of construction is $4,500 per mile; and that five miles lie in the county of C and that the cost of construction is $150,000 per mile; and, that if constructed such road would be highly valuable as an outlet to each and every one of said counties. It is clear that, as to the county of C the cost may be prohibitive. However, spreading the cost over three counties the cost may not be prohibitive, and the benefits may greatly outweigh the *pro rata* costs of construction. Under such facts it is clear that a statute authorizing co-operation is not necessarily a subterfuge. The solution of the doubt, if any, rested with the legislature and not the courts (*In re Madera Irr. Dist.*, 92 Cal. 296, 309, 310 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675]).

Finally the plaintiff asserts that the defendant district has no valid existence as a taxing agency and therefore it has no authority to issue bonds based upon a nonexisting taxing power. This is not a proceeding in *quo warranto* and there are no allegations showing that the defendant district has not complied with every provision of the statute. The point is, therefore, but another claim that the statute is invalid. The plaintiff cites and relies on *People* v. *Van Nuys Lighting Dist.*, 173 Cal. 792 [Ann. Cas. 1918D, 255, 162 Pac. 97]. The case is not helpful. In that case the court held that the defendant was not authorized to operate beyond the confines of certain towns and villages and that the relator's property did not lie within the confines of such towns and villages. He also quotes from *Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 112, 174 [41 L. Ed. 369, 17 Sup. Ct. Rep. 56, 69, see, also, Rose's U. S. Notes]; showing that after the organization of the Fallbrook District would be completed it would " . . . almost necessarily be followed by and result in an assessment upon all the lands included within the boundaries of the district''. That feature is not present in the instant case. The statute before us does not necessarily imply that assessments will be levied on individuals and the record discloses that the defendant board has passed a resolution that none will be made. For the purposes of this decision we must assume that said resolution is true and that it was passed and adopted in good faith. When assessments in fact are to be made on private holdings, the statute provides that notice must be given and a hearing must be held to ascertain the amounts of benefits if any.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 11, 1931.