[S. F. No. 15110. In Bank.—April 24, 1934.]

JOINT HIGHWAY DISTRICT No. 13 OF THE STATE OF CALIFORNIA (a Public Corporation), Petitioner, v. HENRY L. HINMAN, as Treasurer, etc., Respondent.

580

Orrick, Palmer & Dahlquist and Archibald B. Tinning for Petitioner.

Decoto & St. Sure for Respondent.

WASTE, C. J.—The petitioner, Joint Highway District No. 13, hereinafter referred to as the "District", was formed in 1928 by the concurrent action of the boards of supervisors of Alameda and Contra Costa Counties, for the purpose of constructing a public highway and tunnel, part of which is in each of those counties, and generally described as beginning in the city of Oakland and running thence northeasterly to, under and through the Contra Costa hills, and connecting with an existing state highway running to Lafayette and Walnut Creek in Contra Costa County. Respondent is treasurer of the District.

The District was reorganized under the provisions of the "Joint Highway District Act", as revised and amended (Stats. 1931, p. 2072), hereinafter generally referred to as the "Act". The legislature, in 1933, adopted a general "Act validating the formation, organization, reorganization and existence of joint highway districts", previously organized. (Stats. 1933, p. 519.)

The reorganized District caused to be prepared, and duly adopted, plans and specifications for, and made a final estimate of the cost of, the highway planned to be constructed. These were submitted to the director of the department of public works of the state of California, and were duly approved by him. The final estimate of the cost of construction is the sum of $3,752,035.44. The public works administration of the United States has agreed to grant to the District thirty per cent of the cost of the labor and materials included within the cost of construction, to wit, the sum of $1,073,433.82.

The state of California, through its state highway commission, has approved the projected construction, and has authorized the granting of a contribution of $300,000 by the state of California toward the proposed work. The board of directors of the District decided and ordered that serial bonds be issued in the amount of the remainder of the estimated cost, or in the sum of $2,378,601.62, for the purpose of providing the funds necessary to finance and complete the construction. Ninety per cent of the cost of the work, as represented by the bonds, has been allocated by the directors of the District to be raised and paid by a tax levied in Alameda County, the remaining ten per cent to be raised by a like tax in Contra Costa County. The assessed valuation of the real and personal property of Alameda County, as fixed by the county assessment-rolls for the fiscal year 1933–1934, is $385,625,106, and the like assessed value of property in Contra Costa County is $82,663,780. Other than these bonds, ordered to be issued by its board of directors, the District has no bonded indebtedness, has authorized the incurrence of no other obligations, and is ready to proceed with the construction as soon as its bonds are sold.

Petitioner has demanded of the respondent that he sign the bonds; but respondent, on various grounds, has declined and refused to do so, and none of said bonds have

been executed or delivered. This proceeding is to compel the respondent, as treasurer of the District, to sign the bonds.

All the acts and proceedings taken for the purpose of forming, organizing and reorganizing the District were "legalized, validated and declared to be sufficient for all purposes", and the District was declared "to be duly formed, organized and reorganized", by the terms of the validating statute, *supra*. No objection is offered to any of the various steps leading up to the issuance of the bonds. ██ The major contention of the respondent is that the tax method provided by the act under which the District was formed, and the tax method adopted by it, are unconstitutional and amount to a violation of the provisions of both the state and federal Constitutions. First, it is contended that such method violates the provisions of section 1 of article XIII of the state Constitution, in that it fails to provide equal and uniform taxation throughout the District. The section provides that all property in the state not exempt shall be taxed in proportion to its value, to be ascertained by law, or as in the Constitution provided. The tax, to be valid, must be equal in its burdens and uniform in its operation.

The Joint Highway District Act provides that the board of directors of a district shall annually levy a tax within the district sufficient to meet the principal and interest on its outstanding revenue bonds—the kind the petitioner proposes to issue. The amount of the tax being fixed by the board, the treasurer of the district shall thereupon transmit to the board of supervisors of each county in the district a statement of the total sum to be collected within each county in the fiscal year on behalf of the district. On receipt of such statement, it then becomes the duty of the boards of supervisors to cause the amount to be collected by a tax upon and from the taxable property in the county. The tax must be collected in behalf of the district by the proper county officers in the same time, form and manner as county taxes. All laws applicable to the levy, collection and enforcement of county taxes are made applicable to the collection of the special tax, when not in conflict with any of the provisions of the act. We find nothing in the provisions of the act conflicting with the provision of the Constitution cited by respondent. ██ While the legislature

is expressly prohibited by the Constitution from delegating to any special commission, private corporation, association or individual any power to levy taxes, it is authorized to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of many forms of districts organized under the laws of the state. (Const., art. XI, sec. 13.) Whenever a special district of the state requires special legislation therefor, it is competent for the legislature, by general law, to authorize the organization of such district into a public corporation with such powers of government as it may choose to confer upon it. (*In re Madera Irr. Dist.*, 92 Cal. 296, 318 [28 Pac. 272, 276, 675, 27 Am. St. Rep. 106, 14 L. R. A. 755]. See, also, *Stuckenbruck* v. *Board of Supervisors*, 193 Cal. 506, 509 [225 Pac. 857].)

■ Neither does it matter that the incorporated cities situated in Alameda and Contra Costa Counties are included within the boundaries of the Joint Highway District. The cities may be as much benefited as the other sections of the counties, and should bear their proportion of the burden of the cost of the improvement. (*In re Madera Irr. Dist.*, *supra*, at p. 343.) The legislature has provided for the formation of a recognized legal kind of taxing district. Its discretion in doing so may not be questioned. It has provided a well-recognized, efficient and tried method and procedure for the levy and collection of the tax for which the District was formed.

■ Respondent does not claim that any express prohibition against the scheme provided in the act is found in the Constitution; but he does contend that such provisions *impliedly* prohibit any proceeding other than one by which the levy is spread over the entire District at a uniform rate. This objection goes to the allocation of ninety per cent of the cost of the work to Alameda County and ten per cent to Contra Costa County. According to the assessed value of property in the two counties, it appears that the *ad valorem* tax levy necessary to raise the tax will not be the same in each county. This situation does not render the tax lacking in uniformity. In 1 Cooley on Taxation (4th ed.), sec. 322, p. 673, the rule on this subject is thus stated: "In case of a public improvement, where the legislature is of the opinion that only a part of a county is specially interested in the improvement, and that of the part thus inter-

ested some localities would be more benefited than others it may limit the tax to pay for such improvement to the territory deemed to be specially interested, and may apportion the tax among the different districts within the territory in accordance with their respective interests in the improvement, without violating the constitutional requirement of equality and uniformity. . . . As has been clearly stated, 'different taxing districts, for the same general purpose, may be thus created where there are peculiar reasons why one part of the public should bear a proportion of the burden greater than that which should be borne by another, and a greater rate of taxation be imposed on some districts than others.' '' The decided cases support the rule. In *Foster* v. *Pryor*, 189 U. S. 325 [23 Sup. Ct. 549, 47 L. Ed. 835], the Supreme Court of the United States held that in the case before it the legislative act providing for a difference in taxation amounted, in itself, to a provision for a different taxing district within the principles just stated, and that no one would say that it was not a most reasonable and just recognition of a plain difference in circumstances, which ought to lead to a difference in the proportion of taxation between the two places involved. In *Gilson* v. *Board of Commrs.*, 128 Ind. 65 [27 N. E. 235, 11 L. R. A. 835], the court was considering a statute providing for the acquisition by townships of toll roads. The cost was to be divided between the townships in proportion to the assessed value of the toll road purchased in each of the townships. *Lafayette, M. & B. Railroad Co.* v. *Geiger*, 34 Ind. 185, related to the levy and collection of a tax in aid of the construction of a railroad. It was contended that, inasmuch as the railroad ran through several counties, it was necessary that each and all of the counties must vote for an appropriation, and assess the same amount of tax in each county, to make it uniform and equal. In each of these Indiana cases the court held that if the tax assessed was equal and uniform in the county where assessed, it would not violate the requirements of the Constitution as to uniformity in taxation. To the same effect, see *Nettles* v. *Cantwell*, 112 S. C. 24 [99 S. E. 765].

We are of the view that the Joint Highway District Act does not violate the due process provision of the federal Constitution in providing for the organization of the Dis-

trict and the method of levying and collecting the tax. The legislature had full power over the subject matter of the formation of the District. It delegated this power to the boards of supervisors of the respective counties comprising the District. The construction of the proposed highway is a matter in which the whole community has an interest, and is a typical public purpose for which property may be taxed by the state. Questions relating to spreading the tax are matters which rest in the discretion of the state, and are not controlled by either the due process or the equal protection clause of the fourteenth amendment. (*Memphis etc. Ry. Co.* v. *Pace,* 282 U. S. 241 [51 Sup. Ct. 108, 75 L. Ed. 315, 72 A. L. R. 1096].) If the tax can at any time be shown to be palpably arbitrary, thereby amounting to a clear abuse of power, it will fall under the condemnation of the due process clause. Where the difference between the different portions of territory is plain and palpable, the right of the legislature to recognize that difference and to provide for a difference in taxation cannot be denied without imposing restraints upon the constitutional power of the legislature, which cannot in reason be justified. Whether there is such a difference would generally be for the legislature to determine, although it cannot be said that the courts could not, in any possible state of facts, review that determination. (*Foster* v. *Pryor, supra,* at p. 334.)

■ As to notice being required to be given to the taxpayers of the District upon its formation, the legislature expressly validated the creation of all highway districts which had functioned more than six months prior to the taking effect of the validiating act [petitioner being one of them], which had the effect of legislatively creating said District, and thereby obviated the necessity of notice or opportunity to be heard.

■ The tax levy provided by section 22 of the act to be imposed upon the property within the District for the payment of the principal and interest of the bonds is a tax, and not an assessment for benefits, and is imposed upon both real and personal property. Therefore the act does not violate the due process clause of either the federal or state Constitution providing for notice and opportunity to be heard on benefits. For the same reason, the "Special Assessment, Investigation, Limitation and Majority Protest

Act of 1931'' (Stats. 1931, p. 1372) has no application to the tax levy here in question. (*Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 212 [183 Pac. 809].)

█ The provision of section 19 of the act, requiring the payment of one-fifth of the total amount levied by the District within ninety days after the adoption of the resolution for levy by the board of supervisors, relates to the financing of a project without the issuance of bonds, and is therefore not a condition essential to the validity of a proposed bond issue under the alternate plan provided by the act.

█ We do not share the view advanced by respondent that the only provision in the act for a tax is the one found in section 22, which provides for a tax to satisfy merely the obligation created by the proposed bond issue. The power given the board of directors to tax is the power to create a general obligation. All the taxing provisions of the act read together, we are satisfied, give to the board of directors full power to provide for unpaid installments of the tax levied, or anticipated delinquencies in any levy about to be made.

█ It is contended by the respondent that the proposed bond issue and the enabling portions of the Joint Highway District Act, *supra,* violate the provisions of section 18 of article XI of the state Constitution prohibiting certain enumerated political subdivisions of the state from incurring any indebtedness or liability in any manner, or for any purpose, exceeding in any year the income and revenue provided in such year, without the assent of two-thirds of the qualified electors thereof voting at an election. The provision has no application to the petitioner. The prohibition in the Constitution is limited to the public corporations enumerated in the section, and under familiar rules of construction cannot be extended to any others. (*In re Madera Irr. Dist.,* 92 Cal. 296, 342 [28 Pac. 675, 27 Am. St. Rep. 106, 14 L. R. A. 755]; *Sharp* v. *Joint Highway District No. 6,* 111 Cal. App. 81, 84 [295 Pac. 841], answering this identical contention. See, also, *East Bay M. U. Dist.* v. *Railroad Com.,* 194 Cal. 603, 617, 618 [229 Pac. 949].) The bonds here in question are not county bonds, but are obligations of the District.

A further contention of respondent is that the "Joint Highway District Act" is violative of section 12 of article XI of the state Constitution which declares that "the legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes". The section has no application to this case. The act does not grant or delegate to any commission, private corporation, or individual power to make, control, appropriate, supervise or interfere with any improvement, money or property of any of the cities within the boundaries of the District, nor does it give to the boards of supervisors of the counties of Alameda and Contra Costa, or either of said boards, or to the directors of the Joint Highway District, any power to trench upon any of the things mentioned in section 13 of article XI of the Constitution relating to municipal affairs. (*Peterson v. Board of Supervisors,* 65 Cal. App. 670 [225 Pac. 28].)

The collection of the tax in this case is for a state purpose—the development of the highway system of the state—and the legislature has the power to provide for such taxation by appointive boards in such districts. (*Golden Gate Bridge etc. Dist.* v. *Felt,* 214 Cal. 308, 321 et seq. [5 Pac. (2d) 585].) The prior decisions of this court and other authorities supporting such holding are collected and analyzed in that decision.

A minor objection urged against the bonds by respondent remains to be considered. Of the two alternate plans provided in the act for paying the cost of the work, the board of directors of the District elected to finance the project by the issuance of what are denominated in the act "revenue bonds". These bonds are not true revenue bonds, payable exclusively out of the proceeds of the completed improvement, but are to be paid (principal and interest) by an *ad valorem* tax levied annually by the board of directors of the District upon all the real and personal property within the District. To designate such bonds "revenue bonds" would tend to mislead. The form of the bonds, set forth in section 21 of the act, includes the caption "Revenue Bonds". This caption was omitted from the printed bonds,

which are captioned "Joint Highway District No. 13 Bond Fund". The bonds are only required to be "substantially" in the form set out in the act. For both reasons, we deem the omission immaterial. On another ground, we reach the same conclusion. The act, in sections 27 and 39, declares that no error, defect, irregularity or informality which does not affect the jurisdiction of the board of directors of the District shall render void or invalidate any bonds issued under its terms.

Let a writ of mandate issue commanding the respondent to forthwith sign the bonds in question.

Curtis, J., Thompson, J., Shenk, J., Langdon, J., Preston, J., and Seawell, J., concurred.