[L. A. No. 22934. In Bank. Mar. 31, 1954.]

ROY D. PRICE, Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Hildebrand, Bills & McLeod and D. W. Brobst for Appellant.

Robert W. Walker, Frederic A. Jacobus and J. H. Cummins for Respondent.

SCHAUER, J.—This case presents the question of the availability in California of the doctrine of *forum non conveniens* as a ground for refusal by a court to exercise jurisdiction over a cause of action which arose outside the state's boundaries. We have concluded that upon a proper showing and within the limitations imposed by the privileges and immunities clause of the federal Constitution (art. IV, § 2) the doctrine may be applied in this state.

Plaintiff filed this action in the superior court in Los Angeles, under the provisions of the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.), hereinafter termed the FELA, to recover for personal injuries allegedly sustained by him on two different occasions while employed by defendant railroad company in interstate commerce. Both accidents occurred in New Mexico. Defendant answered with a general denial, and also pleaded contributory negligence by plaintiff,[1] and a settlement and release agreement made with plaintiff in New Mexico with respect to the first accident. Defendant further pleaded a special defense based on the doctrine of *forum non conveniens*, and in addition moved under that doctrine to dismiss the complaint. Following a hearing, the trial court granted defendant's motion, judgment of dismissal was entered accordingly, and this appeal by plaintiff followed.

From the pleadings and affidavits upon which defendant's motion to dismiss was based, the following facts appear:

[1]In diminution of damages under the comparative negligence doctrine applicable to FELA actions. (45 U.S.C.A. § 53.)

Plaintiff was a resident and citizen of the State of New Mexico both at the time of the accidents and when this action was brought in Los Angeles. Defendant is a Kansas corporation doing business in both New Mexico and California. All of the witnesses to the accidents reside in New Mexico rather than in this state. In order to defend the action in Los Angeles defendant will be compelled to attempt, at great expense and inconvenience, to bring approximately 18 witnesses distances of some 900 to 1,000 miles from three cities in New Mexico, and to pay their travel, lodging, meals, and miscellaneous expenses and for their time, including professional fees of some five doctors who treated plaintiff in New Mexico. It was uncertain, however, whether any of the doctors would find it possible to leave their practice to attend a trial in Los Angeles, and if not then defendant would be obliged to present their testimonies by deposition, at the loss of the effectiveness of their personal appearance as witnesses. Defendant estimated that the trial would last approximately five to seven days and that the total extra cost of defending the action in Los Angeles rather than in New Mexico would be $4,650. During the years 1947 through and including October 30, 1952, the firm of attorneys which filed this action for plaintiff filed in the superior court in Los Angeles some 67 actions against defendant based upon causes of action arising in other states under the FELA, and also filed 21 of such imported cases in the federal district courts in this state. None of the above related facts are denied by plaintiff or his counsel.

As declared in *Leet v. Union Pac. R. R. Co.* (1944), 25 Cal.2d 605, 609 [155 P.2d 42, 158 A.L.R. 1008], "The rule of *forum nonconveniens* is an equitable one embracing the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action before it may be more appropriately and justly tried elsewhere." And in *Gulf Oil Corp.* v. *Gilbert* (1947), 330 U.S. 501, 504, 507 [67 S.Ct. 839, 91 L.Ed. 1055, 1062], it is stated that "As formulated by Mr. Justice Brandeis, the rule is: '. . . Courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or non-residents or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal.' *Canada Malting Co., Ltd.,* v. *Paterson Steamships, Ltd.* [1932], 285 U.S. 413, 422, 423 [52 S.Ct. 413, 76 L.Ed. 837]. . . . The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction

even when jurisdiction is authorized by the letter of a general venue statute.'' (See, also, cases cited in dissenting opinion of Mr. Justice Frankfurter, *Baltimore & Ohio R. Co.* v. *Kepner* (1941), 314 U.S. 44, 55 [62 S.Ct. 6, 86 L.Ed. 28, 34, 136 A.L.R. 1222].) It is conceded that under section 6 of the FELA (45 U.S.C.A. § 56[2]) the California court has jurisdiction of both the subject matter and the parties involved in this action.

In the Leet case we held that a court of this state having jurisdiction over an action under the FELA could not refuse to exercise it. Our holding was based primarily upon our view that the decision of the United States Supreme Court in *Miles* v. *Illinois Central R. R. Co.* (1942), 315 U.S. 698 [62 S.Ct. 827, 86 L.Ed. 1129], was ''completely decisive that the doctrine of *forum nonconveniens* is no justification for a state court to refuse jurisdiction of an action under the Federal Employers' Liability Act. Likewise, it is conclusive that the state court *must* take jurisdiction. It has no choice in the matter and no rule or policy on its part alters the situation [pp. 612-613 of 25 Cal.2d] . . . From the foregoing it is clear that the California court had jurisdiction to proceed with the trials of the above entitled causes and was required to exercise such jurisdiction. [P. 616] . . .'' It now appears, however, that since our decision in the Leet case the United States Supreme Court has considered the question in *Southern R. Co.* v. *Mayfield* (1950), 340 U.S. 1 [71 S.Ct. 1, 95 L.Ed. 3, 6], and has declared that the Miles case did not limit ''the power of a State to deny access to its courts to persons seeking recovery under the Federal Employers' Liability Act if in similar cases the State for reasons of local policy denies resort to its courts and enforces its policy impartially . . . so as not to involve a discrimination against Employers' Liability Act suits and not to offend against the Privileges-and-Immunities Clause of the Constitution,'' and that if a state court held to the contrary ''because it felt under compulsion of federal law as enunciated by this Court so to hold, it should be relieved of that compulsion.'' The court further expressly recognized the power of each state ''According to its own notions of procedural policy

[2]Section 56: ''No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.

''Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.''

. . . [to] reject, as it may accept, the doctrine [of *forum non conveniens*] for all causes of action begun in its courts," including those arising under the FELA, so long as it discriminates against neither citizens of sister states nor FELA actions.

■ In other words, as declared in the Mayfield case, in refusing to exercise jurisdiction under the doctrine of *forum non conveniens*, a state may not, by reason of the privileges and immunities clause of the federal Constitution (art. IV, § 2), allow suits in its courts by its own nonresident citizens "for liability under the Federal Employers' Liability Act arising out of conduct outside that State and discriminatorily deny access to its courts to a non-resident who is a citizen of another State. But if a State chooses to '[prefer] residents in access to often overcrowded Courts' and to deny such access to all non-residents, whether its own citizens or those of other States, it is a choice within its own control. This is true also of actions for personal injuries under the Employers' Liability Act. *Douglas* v. *New York, N. H. & H. R. Co.* [1929], 279 U.S. 377, 387 [49 S.Ct. 355, 73 L.Ed 747]. Whether a State makes such a choice is, like its acceptance or rejection of the doctrine of *forum non conveniens*, a question of State law not open to review" by the United States Supreme Court, provided the state "enforces its policy impartially . . . so as not to involve a discrimination against Employers' Liability Act suits and not to offend against the Privileges-and-Immunities Clause of the Constitution." (Pp. 3-4 of 340 U.S.) In the Douglas case the court declared (p. 387 of 279 U.S.), "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned."

■ It is unquestioned that the courts of this state have accepted and exercised jurisdiction over transitory causes of action, which arose outside of California in favor of citizens of other jurisdictions, nonresident in California, whether based on the common-law or a statute of a sister state or a statute of the United States (see *Schultz* v. *Union Pacific R. R. Co.* (1953), 118 Cal.App.2d 169, 178 [257 P.2d 1003], and authorities cited in footnote 17, 118 Cal.App.2d 178), provided the law of the sister state is not in direct conflict with the express provisions of the law or the public policy of California and is not contrary to fundamental principles of justice or good morals, or injurious to the welfare of the people. (*Loranger* v. *Nadeau* (1932), 215 Cal. 362, 366 [10 P.2d 63, 84 A.L.R. 1264] ; *Hudson* v. *Von Hamm* (1927), 85 Cal.App. 323, 326-

331 [259 P. 374]; *Thorne* v. *Macken* (1943), 58 Cal.App.2d 76 [136 P.2d 116].) ■ California courts have also accepted jurisdiction of FELA cases both as to causes of action which arose in this state, and as to those which arose outside California in favor of nonresident noncitizen plaintiffs against a foreign corporation doing business in this state. (See *Leet* v. *Union Pac. R. R. Co.* (1944), *supra,* 25 Cal.2d 605; *Estate of Waits* (1944), 23 Cal.2d 676, 678-679 [146 P.2d 5].)

■ It is thus clear that this state has no policy, either statutory or court made, of discrimination against either noncitizens of California or against FELA actions in determining when a nonresident of this state will be given access to state courts to litigate a cause of action which arose elsewhere, and any contrary implications in *Schultz* v. *Union Pacific R. R. Co.* (1953), *supra,* 118 Cal.App.2d 169, 179, 181, are disapproved. The Leet case, discussed hereinabove, appears to have presented the first instance in which the doctrine of *forum non conveniens* has been considered and discussed by this court, and as already mentioned we rejected it in connection with the FELA litigation there involved because of our belief that we were so compelled by the decision of the United States Supreme Court in the Miles case. ■ But since that court, in the Mayfield case, has now lifted that compulsion (if it ever intended any), we perceive no reason why the doctrine should not be available in this state, upon a proper showing and without discrimination against either noncitizens of California or against FELA cases. ■ So far as concerns the FELA, Congress in 1948 empowered the federal district courts to transfer "any civil action," including those based on the FELA, to any other district or division where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." (28 U.S.C.A. § 1404; see *Ex parte Collett* (1949), 337 U.S. 55 [69 S.Ct. 944, 959, 93 L.Ed. 1207, 10 A.L.R.2d 921]; *Boyd* v. *Grand Trunk Western R. Co.* (1949), 338 U.S. 263 [70 S.Ct. 26, 94 L.Ed. 55]; *Pope* v. *Atlantic Coast Line R. Co.* (1953), 345 U.S. 379 [73 S.Ct. 749, 97 L.Ed. 1094].) Although there is no statutory authorization for such transfer by state courts, and although under the doctrine of *forum non conveniens* a cause arising outside California will be dismissed rather than transferred, we are of the view that the injustices and the burdens on local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action

for trial in this state (see discussion 35 Cal.L.Rev. 402-415) require that our courts, acting upon the equitable principles and within the constitutional limits hereinabove stated, exercise their discretionary power to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere. (See *Leet v. Union Pac. R. R. Co.* (1944), *supra,* 25 Cal.2d 605, 609.) A contrary policy would result in the anomaly that a federal district court situated in California could in the interest of justice transfer to another district or division an FELA action filed here, whereas regardless of the equities involved state courts would be powerless to decline to exercise jurisdiction over comparable actions brought in those courts. We are persuaded that such a result would be promotive of neither fairness, justice, nor congressional intent when removal power was bestowed upon the federal district courts.

With respect to particular situations in which a court is justified in dismissing an action under the doctrine of *forum non conveniens,* it was pointed out in *Gulf Oil Corp.* v. *Gilbert* (1947), *supra,* 330 U.S. 501, 507-509, in sustaining the power of a federal district court in New York to dismiss a diversity of citizenship case based upon a tort which occurred in Lynchburg, Virginia,[3] that "Many of the states have met misuse of venue by investing courts with a discretion to change the place of trial on various grounds, such as the convenience of witnesses and the ends of justice. The federal law contains no such express criteria to guide the district court in exercising its power. But the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it.

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private

---

[3] As noted hereinabove, removal power was by statute given to the federal district courts the following year (1948).

interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." In determining that in applying the doctrine the district court had exercised a sound discretion, the court noted that defendant was a Pennsylvania corporation doing business in both Virginia and New York, and (pp. 509-511) that neither the plaintiff nor any witness, with the possible exception of experts, lived in New York; that no one connected with plaintiff's side of the case save counsel for plaintiff resided there; that plaintiff's only justification for seeking trial in New York was the argument, rejected by both the district court and the United States Supreme Court, that the size of the recovery sought by him (some $400,000) might more readily "stagger" a jury from Lynchburg, Virginia, than one from New York; that Lynchburg, the source of all proofs for either side, except possibly experts, was some 400 miles from New York; and that "to

fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.''

As already noted hereinabove, in the present case plaintiff does not controvert the facts alleged by defendant as a basis for invoking the doctrine of *forum non conveniens.* Moreover, the only ground urged by plaintiff for trial in this state is his claim of an absolute right thereto, a right which, as we have seen, has been negated by the holding of the United States Supreme Court in the Mayfield case. Under such circumstances, we are of the opinion that although as in the Gulf Oil Corp. case (330 U.S. 501, 507-509) from which we have just quoted, there is no ''express [statutory] criteria to guide the . . . [trial] court in exercising its power,'' nevertheless that court here properly acted within its discretion in granting defendant's motion to dismiss. The difficulties and inconvenience to defendant, to the court, and to jurors hearing the case, of attempting to proceed where witnesses are not amenable to process, and where testimony may have to be presented by deposition, are apparent. The added expense to defendant of either attempting to bring witnesses from New Mexico to Los Angeles or of having to take their depositions, when not counterbalanced by even a claim of advantage or convenience to plaintff, was another factor properly to be taken into consideration. And as already mentioned, the expense and burden resulting to local taxpayers, courts, and jurors, of providing a forum for the trial of imported cases also weigh against plaintiff.

The suggestion (although not advanced by plaintiff here) that the doctrine should not apply because if an action filed by a nonresident plaintiff is dismissed by the California courts his rights may be barred by limitations statutes is without merit; if plaintiff chooses without justification to bring his action under circumstances warranting application of the doctrine it is a deliberate risk assumed by him and he must be prepared to meet any losses sustained as a result. Moreover, as to FELA cases, any such risk could be obviated by filing in a federal district court, in which the action would be subject to removal ''for the convenience of parties and witnesses, in the interest of justice,'' rather than to dismissal (28 U.S.C.A. § 1404). In the present case, however, the statute of limitations will, on February 15, 1954, have run with respect to the first cause of action and, solely

in order to avoid on plaintiff's behalf the bar of the statute of limitations, defendant has entered into a stipulation with plaintiff that the judgment of the trial court herein shall be reversed as to the first cause of action. In view of such stipulation and of the fact that until this present decision it had been declared to be the law of this state (in *Leet* v. *Union Pac. R. R. Co.* (1944), *supra,* 25 Cal.2d 605, 609) that our courts were compelled to reject the doctrine of *forum non conveniens* with respect to FELA cases, and in order that as to the first cause of action plaintiff may not through reliance upon the Leet decision be barred by the statute of limitations, we have concluded that the judgment should be reversed as to that cause of action.

Accordingly, for the reasons stated, the judgment is reversed as to the first cause of action, and is affirmed as to the second cause of action, neither party to recover costs on appeal.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The holding of the majority in this case injects into the law of this state for the first time in its entire judical history the most monstrous weapon for obstructing the administration of justice ever conceived by any court or judicial tribunal. This holding places it within the power of a trial court to dismiss a transitory action which arose out of this state, even though plaintiff was a citizen of this state, and had a statutory right to prosecute such an action in the courts of this state. This must be so because the Fourteenth Amendment to the Constitution of the United States provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Therefore, a statute, or court-made rule of law which would permit a trial court to dismiss an action brought by a citizen of another state upon a cause of action arising out of this state would be invalid unless it was applied equally against citizens of this state. (*Douglas* v. *New York, N. H. & H. R. Co.,* 279 U.S. 377 [49 S.Ct. 355, 73 L.Ed. 747].)

While it may be true that a state could refuse to confer jurisdiction upon its courts to handle such cases, it may not deny the privilege to some citizens of the United States and not to others. We then have this anomalous situation created

by the majority decision in this case. A citizen of this state is injured in another state. He commences an action in this state for redress of such injury. A motion to dismiss on the ground of *forum non conveniens* is made. If he resists the motion he is faced with the prospect of going through a trial and upon an appeal to this court having a judgment in his favor reversed because the trial court refused to grant such motion. It must then follow that his action would be dismissed and in the meantime the statute of limitation has run in the state where the cause of action arose. In response to his outcry against this travesty on justice, the majority of this court say to him: "It is just too bad. You should have guessed what we would do—whenever we don't like what the trial court does, we just say, it abused its discretion and we reverse its decision." (*Holm* v. *Superior Court,* S.F. No. 18781, *ante,* p. 500 [267. P.2d 1025], decided March 12th, 1954; *Carroll* v. *Superior Court,* S.F. No. 18771, *post,* p. 874 [267 P.2d 1037], decided March 12th, 1954; *Leipert* v. *Honold,* 39 Cal.2d 462 [247 P.2d 324, 29 A.L.R.2d 1185]; *Rose* v. *Melody Lane,* 39 Cal.2d 481 [247 P.2d 335]; *Cary* v. *Wentzel,* 39 Cal.2d 491 [247 P.2d 341]; *Hamasaki* v. *Flotho,* 39 Cal.2d 602 [248 P.2d 910].)

And so, in effect, the holding of the majority here means, that it will never be safe for any citizen of the United States to prosecute in the courts of this state, a cause of action which arose in another state or territory. The plaintiff runs the risk, first of a judgment of dismissal by a trial court, and even if he prevails there, he is faced with the prospect of a reversal by this court with direction to the trial court to dismiss the action. Every lawyer who has had experience in the trial of cases knows that the ultimate outcome of any case of this character depends upon the leaning of the members of the court which has the last say and there can never be a rule to guide the course which he should pursue.

The majority holding is based on two major premises, and it is not clear which is controlling here. First, the majority discusses the inconvenience and expense to the defendant to present its defense to the action if tried in Los Angeles County. Second, the burden upon the courts and people of this state to hear and determine cases of this character. First, since the plaintiff has a statutory right to prosecute such an action in a state court regardless of the inconvenience of the defendant, he should not be deprived of such right by a court-made rule. If there is to be a change

in the rule it should be made by the Legislature and not by the courts. Second, if the doctrine of *forum non conveniens* is applied on the ground that such actions are a burden upon the courts and the people of this state, then all causes of action arising out of this state must be barred. Certainly, if it may be said that causes of action arising out of this state are a burden on our courts and the people of this state, the courts cannot say that some of such actions may be tried in our courts and others not. In other words, so far as the burden upon our courts is concerned, they must be open to all citizens of the United States who have such causes of action to prosecute, or to none at all. Otherwise the privileges and immunities clause of the Fourteenth Amendment is meaningless. Yet the majority opinion conveys the inference that this latter ground is also within the discretion of the court in ruling on a motion to dismiss on the ground of *forum non conveniens.* Obviously this cannot be so. However, it remains to be seen whether or not the only cases to which the doctrine is applied by the majority of this court are those arising under the Federal Employers' Liability Act.

The majority concedes that the courts of this state may not apply the doctrine of *forum non conveniens* discriminately against Federal Employers' Liability Act cases. In view of the fact that there are more than 235 superior judges sitting in the various counties of this state, it is obvious that the doctrine will be applied by some and not by others in cases of similar factual background. It is far from probable that there will be any uniformity in its application. Since these cases constitute by far the largest group of out-of-state cases which are prosecuted in our courts it is not unlikely that they will be the only cases in which the doctrine is applied. But how and when may this be determined? Must a plaintiff have to wait one, two or more years and then make an examination of the register of actions in all of the superior courts of this state in order to determine whether or not there has been discrimination against this class of cases? At this writing the task of showing such discrimination would seem to me to be an impossible burden to place upon any litigant or group of litigants, especially injured working men who are seeking redress for their injuries under the Federal Employers' Liability Act. And yet, the majority of this court, in utter disregard of these considerations, announces a rule here which can only result in depriving the plaintiffs in Federal Employers' Liability Act

cases, arising out of this state, from seeking redress in the courts of this state pursuant to the provisions of said act.

It may be reminiscent of a few decades ago that the railroad companies have been able to accomplish through the majority decision in this case what they have been unable to accomplish through the legislative and executive branches of both the state and federal governments. At the 1953 session of the California Legislature two bills were introduced which purported to incorporate the doctrine of *forum non conveniens* into the law of this state. These bills were Senate Bills No. 789 and 1960. They passed both houses of the Legislature and Senate Bill No. 789 was vetoed by the then Governor Earl Warren, now Chief Justice of the Supreme Court of the United States. In his veto message on this bill he stated: ''If we are to whittle away in this manner the benefits conferred by the Federal Employers' Liability Act, it would soon lose its national uniformity and could at least substantially weaken the purposes for which the act was originally designated. I am not advised that other states have enacted such legislation. The fact that this act has been in effect since 1908 without similar legislation being enacted in other states would indicate a nationwide appreciation of the desirability for this uniformity. At all events if any of the provisions of the act result in a denial of justice to either plaintiffs or defendants, the situation could be remedied nationwide by a simple act of Congress.'' Senate Bill No. 1960 was passed during the closing days of the legislative session and did not become effective because of lack of executive approval.

It appears from the Congressional Record that at the time Congress enacted section 1404(a) (28 U.S.C.A.), which in effect incorporated the doctrine of *forum non conveniens* in federal courts, it refused to enact a bill which would have amended section 6 of the Federal Employers' Liability Act by limiting the employee's choice of venue to the place of his injury or to the place of his residence. The language used by Governor Warren in his veto message on Senate Bill No. 789 is almost the precise language used by the Supreme Court of the United States in the very recent case of *Pope* v. *Atlantic Coast Line R. Co.*, 345 U.S. 379 [73 S.Ct. 749, 97 L.Ed. 1094], where that court held that a nonresident could not be foreclosed from filing an action under the Federal Employers' Liability Act. In that case the Supreme Court said: ''Congress might have gone further; it might have vested state courts with the power asserted here. In fact, the same Congress which enacted

§ 1404(a) [re forum non conveniens in federal courts] refused to enact a bill which would have amended § 6 of the Federal Employers' Liability Act by limiting the employee's choice of venue to the place of his injury or to the place of his residence.

"This proposed amendment—the Jennings Bill—focused Congress' attention on the decisions of this Court in both the Miles and the Kepner cases. The broad question—involving many policy considerations—of whether venue should be more narrowly restricted, was reopened; cogent arguments—both pro and con—were restated. Proponents of the amendment asserted that, as a result of the Miles and Kepner decisions, injured employees were left free to abuse their venue rights under § 6 and 'harass' their employers in distant forums without restriction. They insisted that these abuses be curtailed. These arguments prevailed in the House, which passed the Jennings Bill, but the proposed amendment died in the Senate Judiciary Committee, and § 6 of the Federal Employers' Liability Act was left just as this Court had construed it."

The Jennings Bill was the same type of bill as Senate Bill No. 1960. Had the Congress of the United States intended that the jurisdiction in federal employers' liability cases was to be restricted to the states where the cause of action arose or where the plaintiff resided it would have enacted the Jennings Bill. The Congressional Record discloses that in recent years several attempts have been made by the railroad companies to induce Congress to adopt similar bills and each of such attempts has resulted in failure. This should constitute conclusive evidence that the statute as it now exists does not work an undue hardship upon the railroad companies affected by its provisions or is out of harmony with considerations of justice underlying the basic concept of the Federal Employers' Liability Act.

On May 2d, 1953, the District Court of Appeal, Second Appellate District, Division Three, in its decision in *Schultz* v. *Union Pac. R. Co.*, 118 Cal.App.2d 169 [257 P.2d 1003], after an exhaustive review of all of the authorities followed the decision of the Pope case and again stated that the jurisdiction conferred by the Federal Employers' Liability Act should not be interfered with by the courts or by state legislation. In the Schultz case the District Court of Appeal said: "The Congress having given the right under the Federal Employers' Liability Act to an injured party to maintain an action for damages in the courts of the district where the defendant is doing business

at the time the suit is commenced, the privileges of venue thus granted cannot be frustrated for reasons of convenience or expense. We are not concerned with the justice or the wisdom of such legislation. The province of the courts is to interpret the laws passed by the Congress and not to seek to correct legislative enactments or to change laws because they have given rise to consequences which may not have been contemplated by the Congress, no matter how dire the results.'' ''We hold that the courts of California may not, consistently with the *Constitution* of the United States, decline on the basis of *forum non conveniens* to take jurisdiction of an action under the Federal Employers' Liability Act, founded on a cause of action which arose without the state, brought by a non-citizen and non-resident against a foreign corporation doing business within the state.'' This court denied the petition of the railroad company for a hearing in that case and it remained the law of this state until today when the majority of this court by its decision in the case at bar expressly disapproved the Schultz case.

Since this court decided *Leet* v. *Union Pac. R. Co.*, 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008], relying upon *Miles* v. *Illinois Central R. Co.*, 315 U.S. 698 [62 S.Ct. 827, 86 L.Ed 1129], and *Baltimore & Ohio R. Co.* v. *Kepner*, 314 U.S. 44 [62 S.Ct. 6, 86 L.Ed 28], holding that a state court has no power to refuse to exercise jurisdiction in a federal employers' liability case by use of the doctrine of *forum nonconveniens* or otherwise, the United States Supreme Court ignored those cases in deciding *Southern R. Co.* v. *Mayfield,* 340 U.S. 1 [71 S.Ct. 1, 95 L.Ed. 3]. The court held in the Mayfield case that a state court could refuse to determine a federal employers' liability case under the doctrine of *forum non conveniens* as long as it treated all transitory actions and citizens and non-citizens of the state similarly. In a later case the court held that the courts of the state in which the injury occurred and in which plaintiff was a resident could not, in an action by the railroad, enjoin plaintiff from maintaining a federal employers' liability action in the court of another state although the latter state court was not a convenient forum. The basis of the holding was that the Federal Employers' Liability Act (45 U.S.C.A. § 56) gave the injured person a right to sue in the latter court and the former court could not take it away. (*Pope* v. *Atlantic Coast Line R. Co.*, 345 U.S. 379 [73 S.Ct. 749, 97 L.Ed. 1094].) The court further held that the amendment to the federal law (28 U.S.C.A. § 1404(a)) authorizing

a federal district court to transfer a federal employers' liability action to another federal court on the ground of convenience did not confer power to enjoin on a state court. I point these things out preliminarily because the Pope case casts considerable doubt on the soundness of the Mayfield case, and the rule there that a state could use the doctrine in federal employer liability actions, for if *by reason of the liability act* giving a *right* to the injured person to sue in the state courts, one state court cannot grant an injunction, the forum should not be empowered to dismiss for inconvenience. In addition to that, however, the reasoning in the majority opinion is contrary to the Pope case. The majority states that the federal policy has been expressed in the federal law that permits a transfer from one federal court to another on the ground of convenience (28 U.S.C.A. § 1404(a)) and hence a state court should adopt the doctrine for otherwise we would have the anomalous situation of its application in the federal but not state courts in federal employers' liability cases. That same argument was made in favor of the injunction in the *dissent* by Justice Frankfurter in the Pope case. It was rejected by the majority opinion. There is no policy expressed by section 1404(a) which is applicable to state courts.

Assuming, however, that it is permissible for a state court to dismiss federal employer liability actions on the basis of the doctrine, I do not believe that it should be followed in this state in such actions or in any other transitory actions.

This state has never adopted the doctrine. In *Leet* v. *Union Pac. R. Co., supra,* 25 Cal.2d 605, we held no more than that if such a doctrine were the law in this state it could not under federal law be applicable to federal employers' liability cases. To announce the doctrine as the law of this state is wholly out of harmony with the established policy of this state for its courts to entertain, regardless of convenience, transitory causes of action. Indeed it is the court's duty. It has been repeatedly held that a court has a mandatory duty to consider and determine on the merits all cases over which it has jurisdiction. (*Gering* v. *Superior Court,* 37 Cal.2d 29 [230 P.2d 356] ; *Robinson* v. *Superior Court,* 35 Cal.2d 379 [218 P.2d 10] ; *Turesky* v. *Superior Court,* 97 Cal.App.2d 838 [218 P.2d 784] ; *City of San Diego* v. *Andrews,* 195 Cal. 111 [231 P. 726].) And the court does and should exercise jurisdiction in transitory causes of action arising elsewhere. (*McKee* v. *Dodd,* 152 Cal. 637 [93 P. 854, 125 Am.St.Rep. 82, 14 L.R.A.N.S. 780] ; *Ryan* v. *North Alaska Salmon Co.,* 153 Cal 438 [95 P. 862] ; *Luikart* v.

*McDonald,* 11 Cal.App.2d 433 [53 P.2d 1011] ; *Faras* v. *Lower California Dev. Co.,* 27 Cal.App. 688 [151 P. 35] ; *Roberts* v. *Dunsmuir,* 75 Cal. 203 [16 P. 782] ; *Loranger* v. *Nadeau,* 215 Cal. 362 [10 P.2d 63, 84 A.L.R. 1264] ; *Hudson* v. *Von Hamm,* 85 Cal.App. 323 [259 P. 374].) As expressed in *Loranger* v. *Nadeau, supra,* 215 Cal. 362, 366 : ''It is the general rule in tort actions that the court will, if it has jurisdiction of the necessary parties, and can do substantial justice between them in accordance with its own forms of procedure, enforce the foreign law, if it is not contrary to the public policy of the forum, to abstract justice or pure morals, or injurious to the welfare of the people of the state of the forum . . . In *Loucks* v. *Standard Oil Co.,* 224 N.Y. 99 [120 N.E. 198, 202], it was said : 'The courts are not free to refuse to enforce a foreign right at the pleasure of judges, *to suit the individual notion of expediency or fairness.* They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.' In *Reynolds* v. *Day,* 79 Wash. 499 [L.R.A. 1916A, 432, 140 Pac. 681], it was said : 'Under the rule of comity, rights which have accrued by the law of another state or nation are treated as valid everywhere. When the action is transitory and the jurisdiction of the parties can be obtained by service of process, the foreign law, if not contrary to the public policy of the state where the action is brought, nor contrary to abstract justice or pure morals, nor calculated to injure the state or its citizens, will be recognized and enforced. This rule applies to actions *ex contractu* and actions *ex delicto.* In all cases, the right to recover is governed by the *lex loci,* and not by the *lex fori.*' '' (Emphasis added.) With respect to the duty of our courts to enforce federally created rights (the Federal Employers' Liability Act is such), this court, contrary to the majority opinion, considers it their mandatory duty and is not concerned with the imagined overcrowding of our courts with such cases. In *Miller* v. *Municipal Court,* 22 Cal.2d 818 [142 P.2d 297], we had before us the question of whether the state municipal court was required to enforce the federal emergency price control law. We held that it was, stating : ''As Congress in the lawful exercise of a constitutional power, by its statutes declares the policy for both the people and the states (see Second Employers' Liability Cases, *supra,* p. 57), so does it declare the policy of the people and of the states with regard to the enforcement of a law such as the Emer-

gency Price Control Act of 1942. In enforcing that act by assuming jurisdiction of a consumer action pursuant to congressional mandate, in the course of the exercise of its ordinary jurisdiction, a state court is not entertaining an action created by a totally unrelated sovereign, but is merely yielding to the superior exercise of a lawful right granted Congress by the United States Constitution.

" . . . But, considering the intent of the framers of the Constitution, the acts of the early Congresses, and the provisions of article VI establishing the supremacy of federal law, it seems clear that a state court, otherwise competent to exercise jurisdiction over the subject-matter, the parties, and the amount in controversy, *must assume jurisdiction* of an action created by federal law enacted pursuant to a legitimate federal function, . . .

"Any argument of hardship which, it may be asserted, will result from the additional burden of litigation in state courts, must be considered settled by the Supreme Court of the United States. 'We are not disposed,' the court observed, 'to believe that the exercise of jurisdiction by the state courts will be attended by any appreciable inconvenience or confusion; but, be this as it may, *it affords no reason for declining jurisdiction conferred by law.* The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication.' " (Emphasis added; *Miller* v. *Municipal Court,* 22 Cal.2d 818, 850-851 [142 P.2d 297].) Thus there is no basis for the comments in the majority opinion about the supposed burden of determining transitory actions. It is the fixed policy of this state to enforce at least federally created rights without regard to convenience. Unless the Miller case is overruled the majority opinion cannot stand; in any event, any repudiation of it should be done by the Legislature, not by this court.

The difficulty of stating properly the circumstances under which the doctrine should or should not result in dismissal (later discussed), is an additional reason why it should not be adopted—why it is more appropriately a legislative problem. Questions of venue to which the present problem is analogous have been traditionally a legislative or constitutional matter. (*People* v. *Zegras,* 29 Cal.2d 67 [172 P.2d 883]; *San Jose I. & C. Storage Co.* v. *San Jose,* 19 Cal.App. 2d 62 [64 P.2d 1099]; *Perkins* v. *Winder,* 123 Cal.App. 467

[11 P.2d 394]; *People* v. *Spring Valley Co.*, 109 Cal.App.2d 656 [241 P.2d 1069].)

The confusion and injustice which have resulted from the vague doctrine is ably pointed out in discussing its application to transfers of actions in the federal courts under the federal law: "A close review of cases involving Section 1404(a) reveals the extent of doubt, uncertainty, and confusion which has grown up within our courts since this section became law. At first the courts were wont to declare, as in *Hayes* v. *Chicago, R. I. & P. R.R.* [79 F.Supp. 821], that:

" 'There is no basic reason why plaintiffs in cases under the Federal Employers' Liability Act should not be subject to the same equitable doctrine of transfer as applies to all other civil cases now that Congress has enacted a statute which indicates no exception to the application of that principle.'

"However, it has lately been held that its purpose was to correct abuses and that relief under it was warranted only in exceptional cases. In *Naughton* v. *Penn. R.R.* [85 F.Supp. 761], the court said:

" '. . . After all, Section 6 of the Federal Employers' Liability Act was designed to give the injured employee a wide choice of forum in which to bring his action. It has not been repealed and the underlying policy remains and should be carried out whenever possible unless serious inconvenience or injustice to the defendant will result. . . .'

"And in *Boyd* v. *Grand Trunk Western R.R.* [338 U.S. 263 (70 S.Ct. 26, 94 L.Ed. 55)]:

" '. . . We hold that petitioner's right to bring the suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of Section 5 of the Liability Act: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void. . . ." The contract before us is therefore void.'

"Thus the injured man has a right in the choice of his forum, so substantial that he cannot contract it away. No other litigant in any civil case has any such right to choose the forum in which to have the case heard. That, at least, is one reason for holding that he should not be 'subject to the same equitable doctrine of transfer as applies in other civil cases.' "

"The incidental injustice to a railroad in an isolated or exceptional case resulting from the exercise of the right to

choose forum is as nothing compared to the chaos, confusion, and gross injustice that results in cases where the plaintiff must first litigate for months on end his venue selection, with affidavits, motions, briefs, hearings, and numerous delays, and with one judge in one particular case sustaining jurisdiction over a certain railroad company and another judge in the adjoining courtroom denying it. To have the venue of actions determined by such a system is not rule by law, but rule by whim and caprice. On the same identical state of facts conflicting and varying decisions may be handed down by different courts and a great volume of litigation is thus bound to rise over preliminary questions.

"A district judge in *United States* v. *E. I. du Pont de Nemours & Co.* [87 F.Supp. 962], after wrestling with the problems involved in deciding a motion to transfer, stated:

" '. . . To attempt to resolve the niceties involved in balancing the relative conveniences and inconveniences of all of the parties to any degree of certainty, resort must be had to an apothecary's scale and a crystal ball; neither of which implements are available to this court.'

"Utter confusion is present in the law. . . .

"The courts have all taken the attitude in cases decided under Section 1404(a) that no set standard or policy can be promulgated by them. The attitude of the courts is reflected in a quotation from *Spence* v. *Norfolk & W. Ry.* [89 F.Supp. 823]:

" 'The petition of defendant for rehearing seeks "a clarification of the policy of the Court with respect to cases of this character brought against it in the Northern District of Ohio." Let it be clearly understood that the Court is not by the present ruling, providing parties in litigation with a slide rule to enable them to calculate with mathematical precision the result that will be reached on motions to transfer that may be filed in other cases. All cases will be heard and decided on their particular facts. The very phraseology of the statute under which this motion is filed clearly demonstrates the logic of this conclusion. The only policy of the Court, in respect of this case or any other case, which may be announced is that the law must be followed. "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy." *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055.'

"The widespread confusion in the law resulting from the present more or less universal practice of filing either motions to transfer or dismiss has reacted to the special disadvantage of railroad men caused to suffer injuries not fatal or permanently crippling and especially when injury occurred in sparsely settled communities, and when the injured employee resides at a railroad point or division where it is impossible to obtain competent counsel or to have the case tried and heard in a court experienced in trials of this class. The threat of using and employing these motions is a form of mental coercion or compulsion decidedly advantageous to the railroad and disadvantageous to the employee. Many lawyers will not undertake the prosecution of these cases knowing of the difficulties and the expense, time, and effort of trying in effect several lawsuits. Therefore, the railroads are able to settle, especially in this western country, this class of cases on their own terms. . . ." (Parnell Black and John L. Black, *Injustices in the Federal Forum Non Conveniens Rule,* 3 Utah L. Rev. 314, 317-320; see, also, 41 Cal.L.Rev. 507; 38 Va.L.Rev. 569.)

Substantial authority in other states has rejected the doctrine. (See cases collected, 35 Cal.L.Rev. 380, 388.)

Assuming the doctrine is available, difficult problems develop, such as the circumstances relevant to whether a dismissal is proper, the review of the trial court's determination of the question, and the injustices inherent in its application.

Among the circumstances justifying a dismissal the majority opinion relies heavily on the inconvenience to our courts—congested calendars·and the use of our courts by nonresidents. I have above pointed out that this factor can have no significance in view of our decision in *Miller* v. *Municipal Court, supra,* 22 Cal.2d 818. In addition to that, however, the federal courts have not considered it is a factor in applying the transfer provisions of the federal law which are based on convenience. It is stated with supporting authority that: "However, a striking demonstration of the novelty in the new federal doctrine of forum non conveniens based on 1404(a) is that inconvenience to the court appears to play no part in the exercise of discretion to transfer. The most crowded district court in the nation, that of the Southern District of New York, has retained cases (some of which promised large expenditures of time and effort) without considering its own convenience in its ascertainment of the most suitable forum. A similar course has been followed by other

burdened courts. On the other hand, cases have been transferred from current or relatively uncrowded dockets to overburdened courts which were more convenient for litigants and witnesses.

"The language of some opinions seems to indicate that convenience to the court is indeed an important factor under 1404(a), but an analysis of the facts meriting transfer in these cases indicates that convenience to the court was really unimportant." (*Factors of Choice for Venue Transfer Under 28 U.S.C.A. § 1404(a)*, 41 Cal.L.Rev. 507, 518-519.)

The majority opinion states that whether the statute of limitations may have run pending the commencement of the action in a state court and its proposed dismissal, is not a circumstance to be considered; that plaintiff takes and should take the risk of choosing the right forum. This is indeed harsh. He is forced to speculate not only on how the trial court may decide the question but also what the views of an appellate court may be. As evident from the confusion in the federal case above discussed, such an impossible burden should not be placed upon him. Suppose a case where the location of the witnesses is equally divided between the state of the chosen forum and another or other factors are equally balanced, the plaintiff has no means of predicting the court's decision. He is left at the mercy of the defendant—must have his prior approval of a particular court. Plaintiff having the right to have a particular court exercise its jurisdiction, and that court having jurisdiction, should be able to have the dismissal denied in any case where the statute of limitations will have run by the time that issue is finally determined. As said by a writer on the subject: "And all cases hold that jurisdiction must be assumed if the defendant is not subject to process, *or the statute of limitations has run,* in the state that he claims is more appropriate." (Emphasis added; Barrett, *The Doctrine of Forum Non Conveniens*, 35 Cal.L.Rev. 380, 419-420.)

The review on appeal of the trial court's decision on the motion to dismiss presents many problems. If the motion is denied it would be an interlocutory order and not appealable but would be reviewable on the appeal from the judgment. If plaintiff had obtained judgment the case would have, of course, been tried with all the expense, time and inconvenience of witnesses involved. Yet presumably the appellate court could reverse the judgment because it thought

the motion to dismiss should have been granted. In arriving at that conclusion it would be in the awkward position of declaring that the trial court was not the convenient forum yet be faced with the fact that the inconvenience had already been endured. Its reversal, so far as the convenience question is concerned, would fall short of achieving any just purpose. If the motion is granted, an appeal could be taken from the judgment of dismissal, but that places it in the hands of the defendant to delay and harass the plaintiff. When the question is reviewed it will be difficult to ascertain whether the trial court abused its discretion. In view of the trend of recent decisions of this court in this field, the power conferred upon a trial court to exercise its discretion in cases of this character, is almost nonexistent. (See *Holm* v. *Superior Court,* S.F. No. 18781, *ante,* p. 500 [267 P.2d 1025], decided March 12, 1954; *Carroll* v. *Superior Court,* S.F. No. 18771, *post,* p. 874 [267 P.2d 1037], decided March 12, 1954; *Leipert* v. *Honold,* 39 Cal.2d 462 [247 P.2d 324, 29 A.L.R. 1185]; *Rose* v. *Melody Lane,* 39 Cal.2d 481 [247 P.2d 335]; *Cary* v. *Wentzel,* 39 Cal.2d 491 [247 P.2d 341]; *Hamasaki* v. *Flotho,* 39 Cal.2d 602 [248 P.2d 910].)

The question here presented is one of great magnitude. It involves considerations of public policy of great importance not only to those who may wish to prosecute out-of-state causes of action in our courts, but to our courts as well, where the impact upon our court procedure of numerous motions to dismiss such actions in trial courts, and a review by our appellate courts of rulings on such motions, is bound to create perplexing problems. It seems to me that if the doctrine of *forum non conveniens* is to be adopted in this state, it should be by legislation where ample safeguards could be provided to protect those plaintiffs who in good faith, and after proper advice, seek redress in our courts on out-of-state causes of action.* If such a statute were enacted,

---

*Some of such safeguards were contained in Senate Bill No. 1960 which was passed by the 1953 California Legislature and did not become effective because of lack of executive approval. Said bill sought to amend section 581 of the Code of Civil Procedure by adding thereto the following: ''5. By the court, upon motion of the defendant made at or before the time of demurring or answering, when it appears from affidavits or otherwise that the cause of action did not arise within this State, and that at the time the cause of action arose the plaintiff was not a resident of this State, and that a court of this State is not a convenient forum for the parties and witnesses and that the dismissal of the action will serve the interests of justice. If the court determines to grant the motion, it shall make an interlocutory order which shall impose

it could, and undoubtedly would, embrace rules of procedure to guide the courts in the application of such doctrine. The majority here appear to be oblivious to these considerations.

For the foregoing reasons I would reverse the judgment.

Appellant's petition for a rehearing was denied April 28, 1954. Carter, J., was of the opinion that the petition should be granted.

---

such conditions as the court in its discretion deems just and reasonable, but, in any event, such interlocutory order shall require that there be filed in the action a written agreement executed by the moving defendant and such other defendants as the court shall determine, which agreement as to each such defendant shall contain

"(a) Such stipulations as may be necessary to provide effectively that plaintiff may bring and maintain an action upon the same cause of action in such jurisdiction or jurisdictions as the court shall determine or, if such action cannot be brought and maintained in any such jurisdiction, that the interlocutory order and any final dismissal shall be vacated and that the time within which the action must be brought to trial shall commence on the date when the interlocutory order or dismissal is so vacated; and

"(b) Such stipulations as may be necessary to suspend effectively all statutes of limitations which have not expired at the time the action was commenced for a period sufficient to make effective the provisions of the foregoing subdivision (a) which period shall be not less than 180 days after the dismissal shall become final; and

"(c) Such stipulations as may be necessary to assure that the moving defendant, and such other defendants as the court shall determine, will voluntarily make a general appearance in, or be subject to the process of a court in the jurisdiction or jurisdictions determined by the court as provided in subdivision (a).

"Upon proof that the conditions of the interlocutory order have been performed within the time allowed, the court, upon motion, shall thereupon enter a judgment of dismissal. If the conditions are not performed, the court, upon motion, shall vacate the interlocutory order and enter an order denying the motion or make such other order as is just. An interlocutory order hereunder is an appealable order.

"The party making the motion shall have the burden of proof that the cause of action did not arise within this State, that a court of this State is not a convenient forum for the parties and witnesses and that dismissal will serve the interests of justice."