[No. B094787. Second Dist., Div. Five. Mar. 12, 1996.]

In re CHRISTOPHER B. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v.
JACQUELINE C., Defendant and Appellant.

## COUNSEL

Jane Winer, under appointment by the Court of Appeal, for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Principal Deputy County Counsel, and Jill Regal for Plaintiff and Respondent.

## OPINION

## TURNER, P. J.—

### I. INTRODUCTION

Jacqueline C., who is the maternal aunt of Christopher B. and Zion B. and lives in Tennessee, appeals from a juvenile court's supplemental order made pursuant to Welfare and Institutions Code[1] section 387: denying her reunification services; removing the minors from her custody; and ordering the Los Angeles County Department of Children and Family Services (the department) to provide permanent placement services for the minors. The aunt contends the May 31, 1995, dispositional order should be reversed because under the Uniform Child Custody Jurisdiction Act (Fam. Code, § 3400 et seq.) California courts should not have exercised jurisdiction on forum non conveniens grounds. We affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Christopher B. was born on January 31, 1987, in California. Zion B. was born on January 10, 1988, in California with drugs in his system. The minors were declared dependents of the court pursuant to section 300, subdivision (a), because of neglect and the mother's substance abuse problem which limited her ability to care for the two children. On March 16, 1988, the court ordered the minors suitably placed. Under the terms of the Interstate Compact on Placement of Children (Fam. Code, § 7900 et seq.), the minors were placed with the aunt in Tennessee who cared for them and planned to adopt

---

[1]Unless otherwise indicated, all future statutory references are to the Welfare and Institutions Code.

the youngsters. They remained with the aunt almost seven years and the parents' rights were legally terminated.

A June 24, 1994, the department case plan update judicial review report showed, in pertinent part: the minors had made significant positive developmental and social gains during the past several months; the aunt was exceptional in her commitment to the minors; and adoption continued to be the appropriate permanent plan.

On September 13, 1994, the Tennessee child protective services agency in Memphis, Tennessee, removed the minors from the aunt and took them into custody. It was alleged that the aunt had inappropriately physically disciplined the minors causing them unreasonable pain and suffering. The Tennessee child protective services agency in Memphis could not find an appropriate relative and, thus, asked that the minors be returned to California and that the interstate compact agreement be discontinued. The aunt stated she was "willing to participate in any counseling program the court and [the department] orders her to participate in."

On September 15, 1994, the department filed a section 387 supplemental petition requesting that the minors be returned to California because the Tennessee child protective services agency in Memphis wanted to send the minors back to California for ongoing supervision. An attorney was appointed to represent the aunt in abstentia at the detention hearing on September 16, 1994. Through counsel, the aunt entered a denial of the allegations. On September 23, 1994, after returning to California, the minors were placed in foster care in this state. The foster mother disciplined the minors with a belt and the minors were removed from her care and placed in a group home. On October 7, 1994, the trial court ordered the department to determine if the paternal uncle and his family in Tennessee were suitable for placement. In a report filed October 27, 1994, the department concluded, in pertinent part, after speaking with the minors and seeing pictures taken of them in Tennessee, the aunt's discipline was "excessive and abusive."

On December 20, 1994, the court sustained the amended allegations of the petition that on or about unspecified dates prior to September 13, 1994, the minors were "subjected to inappropriate physical discipline by [the aunt] causing them unreasonable pain [and] suffering." The minors had been hit with switches and belts as well as a long paddle. Christopher B. was hit on the head with a walking stick. Zion B. was struck on the head with a phone. Christopher B. had a one-inch cut on his thigh after being hit with a metal spatula. The minors were subjected to ritualistic discipline, i.e., having to lie on their backs with their arms raised and being required to say: " 'Thank you

mom for conditioning my mind and body, feel free to do it any time. Drive on mom, drive on mom, permission to get up?' " The Tennessee Department of Human Services completed an assessment on the possibility of placing the minors with the aunt. The Tennessee child protective services agency advised the California court it would be risky to do so. The aunt sent the child with makeup to hide their bruises, which led the Tennessee Department of Human Services to conclude the aunt knew her methods of discipline were wrong. A therapist concluded the aunt lacked insight regarding why the abuse happened.

On February 9, 1995, the aunt's attorney filed a points and authorities in support of her request for reunification services. The aunt also filed with the court an October 23, 1994, letter describing her care of and love for the minors. She advised the court she would do anything to get the children back and was taking parenting classes. In a November 16, 1994, letter denying the allegations, the aunt stated she was willing to rectify any problems and had completed parenting classes. The aunt indicated: she was seeing a counselor; praying the court to decide to return the minors to her; and "throwing [herself] on the mercy of [your] court." Also before the court was a certificate from parenting classes and the minors' progress reports. On February 17, 1995, the court read and considered the request of the aunt for reunification services and heard argument of her counsel. The court denied the aunt's request finding it was not in the best interest of the children. The court also noted it "[did not] think whether reunification services [were] ordered would have any restraining effect on [the aunt]."

At the disposition hearing which was concluded on May 31, 1995, the department submitted a May 24, 1995, progress report. The matter was continued for a feasibility report on whether the minors could be placed with their paternal uncle in Tennessee. The department reported that the Tennessee Department of Human Services found the maternal uncle and his wife were not recommended as adoptive placement resources. The report stated: "The attached letter recommends that these children not be placed with [the maternal uncle and his family]. The facts that support this recommendation are: 1) that although [the maternal uncle] has been married to his wife for 17 years, he has fathered four children by other women during their marriage; 2) [the maternal uncle] reports an addiction to drugs from which he has been rehabilitated for two years; and 3) his arrest records includes drug related charges, driving with a suspended license, and disturbing the peace. In addition, to the unstable marriage, Tennessee also questions [the aunt]'s ability to parent." The court ordered long-term suitable placement and long-term foster care for the minors in California. The court ordered monitored visitation for the aunt.

The aunt filed a notice of appeal from the dispositional order on July 17, 1995.

## III. DISCUSSION[2]

■ The aunt argues that California should not have exercised jurisdiction because of the forum non conveniens doctrine. ■ Our Supreme Court has described the forum non conveniens doctrine as follows: "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere. [Citation.] The doctrine was first applied in California in *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577. . . . We described the basis of the doctrine as follows: ' "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." . . . [T]he injustices and the burdens on local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this state . . . require that our courts, acting upon the equitable principles . . . , exercise their discretionary power to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere.' [Citation.] [¶] In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. [Citations.]" (*Stangvik* v. *Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14].)

[2]A dispositional order, issued upon a supplemental petition pursuant to section 387 removing the child from the home, is appealable as a judgment. (*In re Paul E.* (1995) 39 Cal.App.4th 996, 1000, fn. 3 [46 Cal.Rptr.2d 289]; *In re Jonique W.* (1994) 26 Cal.App.4th 685, 690 [31 Cal.Rptr.2d 601]; *In re Megan B.* (1991) 235 Cal.App.3d 942, 950 [1 Cal.Rptr.2d 177].)

This rule of law is codified at Code of Civil Procedure section 410.30 which provides, in pertinent part: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." Family Code section 3407, subdivision (a) permits a trial court to find its state is an inconvenient forum even after making an initial decree and states: "A court which has jurisdiction under this part to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." In assessing whether to make a forum non conveniens determination, Family Code section 3407, subdivision (c) lists varying factors.[3]

The doctrine of forum non conveniens is not jurisdictional. (*Credit Lyonnais Bank Nederland, N.V.* v. *Manatt, Phelps, Rothenberg & Tunney* (1988)

---

[3]Family Code section 3407, subdivision (c) et seq. states: "(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others: [¶] (1) If another state is or recently was the child's home state. [¶] (2) If another state has a closer connection with the child and the child's family or with the child and one or more of the contestants. [¶] (3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state. [¶] (4) If the parties have agreed on another forum which is no less appropriate. [¶] (5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 3401. [¶] (d) Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to ensuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties. [¶] (e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate consent and submission to the jurisdiction of the other forum. [¶] (f) The court may decline to exercise its jurisdiction under this part if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding. [¶] (g) If it appears to the court that it is clearly an inappropriate forum, the court may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorney's fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party. [¶] (h) Upon dismissal or stay of proceedings under this section, the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court. [¶] (i) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction, the court of this state shall inform the original court of this fact."

202 Cal.App.3d 1424, 1430-1431, fn. 8 [249 Cal.Rptr. 559]; *Corrigan* v. *Bjork Shiley Corp.* (1986) 182 Cal.App.3d 166, 173 [227 Cal.Rptr. 247] disapproved on another point in *Stangvik* v. *Shiley Inc.*, *supra*, 54 Cal.3d at p. 760; *Pham* v. *Wagner Litho Machinery Co.* (1985) 172 Cal.App.3d 966, 972 [218 Cal.Rptr. 476].) The doctrine involves a trial judge declining to exercise jurisdiction which otherwise exists. (*Stangvik* v. *Shiley Inc.*, *supra*, 54 Cal.3d at p. 751; *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577, 582-584 [268 P.2d 457, 43 A.L.R.2d 756]; *Leet* v. *Union Pac. R. R. Co.* (1944) 25 Cal.2d 605, 609 [155 P.2d 42, 158 A.L.R. 1008]; Judicial Council com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 410.30, pp. 490, 494.)

In dependency litigation, nonjurisdictional issues must be the subject of objection or appropriate motions in the juvenile court; otherwise those arguments have been waived and may not be raised for the first time on appeal. (*In re Troy Z.* (1992) 3 Cal.4th 1170, 1181 [13 Cal.Rptr.2d 724, 840 P.2d 266] [plea of no contest to § 300 petition foreclosed appellate challenge to sufficiency of the evidence]; *In re Kevin S.* (1996) 41 Cal.App.4th 882, 885 [48 Cal.Rptr.2d 763] [mother waived the right to contest finding of reasonable reunification efforts by not objecting in trial court]; *In re Anthony P.* (1995) 39 Cal.App.4th 635, 640-642 [46 Cal.Rptr.2d 107] [failure to raise sibling visitation issue in superior court]; *Steve J.* v. *Superior Court* (1995) 35 Cal.App.4th 798, 810-811 [41 Cal.Rptr.2d 731] [department of social services' failure to dispute father's right to reunification services in trial court]; *In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1831 [30 Cal.Rptr.2d 245] [by only seeking placement with herself in superior court, mother waived right on appeal to contend child should be placed with grandmother]; *In re Mark C.* (1992) 7 Cal.App.4th 433, 446 [8 Cal.Rptr.2d 856] [father's failure to pursue issue waived claim expert psychological testimony should have been admitted at dispositional proceeding]; *In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412 [286 Cal.Rptr. 592] [parent waived right to proof beyond a reasonable doubt test mandated by Indian Child Welfare Act (25 U.S.C. §§ 1901-1903) when no objection was interposed to court's use of clear and convincing evidence standard]; *In re Richard H.* (1991) 234 Cal.App.3d 1351, 1362 [285 Cal.Rptr. 917] [parent waived right to raise timeliness issues by failing to assert error in trial court]; *In re Katrina L.* (1988) 200 Cal.App.3d 1288, 1299 [247 Cal.Rptr. 754] [parent's failure to object to adequacy of oath taking waived issue]; *In re Heidi T.* (1978) 87 Cal.App.3d 864, 876 [151 Cal.Rptr. 263] [failure to object in superior court waived issue of right to separate counsel for minors].)

Recognizing that no forum non conveniens objection was interposed in the trial court, the aunt argues nonetheless that the issue can be raised for the first time on appeal by reason of our Supreme Court's decision of *In re Stephanie M.* (1994) 7 Cal.4th 295, 311 [27 Cal.Rptr.2d 595, 867 P.2d 706].

In *Stephanie M.*, the nation of Mexico, acting as amicus curiae, presented a forum non conveniens argument which was not raised in the trial court. Our Supreme Court considered the forum non conveniens issue even though it was raised for the first time on appeal for the following reason: "Because the courts of this state have received a request from the sovereign nation of Mexico that custody of a minor citizen of Mexico be turned over to a guardian appointed by a court of Mexico, we feel compelled to answer the jurisdictional claims of Mexico, although they have not been squarely raised by a party." (*Ibid.*) *Stephanie M.* is inapposite. We have not received a foreign nation's request to resolve issues concerning one of its citizens. The two minors were born in California and at the time of the adjudication and disposition hearings resided in California. Moreover, unlike *Stephanie M.* where a friend of the court did not participate in trial proceedings, in this case the aunt was represented by counsel below. Further, she offered to submit to California court orders through her counsel and in a written communication to the trial judge. Additionally, the State of Tennessee has not sought amicus curiae status, to otherwise intervene, or to assert a right to custody of the minors. The State of Tennessee through its child protective services agency recommended that the minors be returned to California. The Tennessee authorities determined that the minors could not be suitably placed with relatives in that state. Finally, when determining the past, the question of whether a stay request must be initially presented to the trial judge, the California Supreme Court held a forum non conveniens contention must be first be raised below. (*Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 862 [126 Cal.Rptr. 811, 544 P.2d 947]; *Thomson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738, 747 [59 Cal.Rptr. 101, 427 P.2d 765].) For these combined reasons, *Stephanie M.* is not controlling and the forum non conveniens contention has been waived.

## IV. DISPOSITION

The order is affirmed.

Grignon, J., and Armstrong, J., concurred.